### No. 8746.

### EDWARD S. MAUNSELL vs. HENRY WILLETT.

A party seeking to recover under an alleged partnership, against his alleged partner, must prove the existence of the partnership with legal certainty.

In this case, in which plaintiff claims that he was a partner with the defendant in the construction of certain wharves and in a wharfage business carried thereon, the evidence shows that the wharves had been constructed under a contract made by defendant in his individual name, with funds realized by means of his individual note; and that the plaintiff was his solicitor and collector on a compensation consisting of one-fourth of the gross receipts of the wharfage business. Hence, there was no partnership and plaintiff has no ownership in the wharves.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*T. M. Gill* and *Breaux & Hall* for Plaintiff and Appellant.

*J. H. Ferguson* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.    This is an action for the dissolution and settlement of an alleged partnership between plaintiff and defendant in the wharfage business and in a land trading speculation.

Plaintiff charges that on or about the 1st of August, 1880, he formed a co-partnership with defendant for the purpose of building wharves and of engaging in the wharfage business at a point opposite to the city of New Orleans, on lands owned by Peter Marcy, who charged them no rent for the use of his lands. That the gross receipts from said business was to be divided as follows: one-half to be applied to the payment of the cost of the wharves and of other incidental expenses, and the balance to be equally divided between the alleged partners; and that the partnership continued in operation until February, 1882, when the lands on which the wharves had been built ware sold by the owner thereof.

He further charges that the negotiation for the sale of said lands had been entrusted to the defendant and himself by the said Peter Marcy, who had given them the refusal of the same for $90,000, with the understanding that any amount in excess of said sum which they might realize on the sale of the property would accrue to them in equal shares; that said lands having been subsequently sold for $100,000, the defendant received $10,000 on said sale from Marcy, thus entitling plaintiff to one-half of said profits thus realized. Hence, he sues for the sum of $5000 on said transaction and for other sums which may be due him on account of partnership income.

The answer is a general denial. The judgment of the district court is in favor of defendant and plaintiff appeals.

The issue presented in the case calls for the solution of the following two questions:

1. Was there a partnership between the parties as owners of the wharves built in 1880 on Peter Marcy's lands opposite to this city, and in the wharfage business carried thereon?

2. Was the sale of the lands on which those wharves had been erected made under the negotiations flowing from the refusal of the same for $90,000 given to plaintiff and defendant by Peter Marcy in November, 1881?

Under our examination of the record both questions must be answered in the negative, and hence we conclude that the judgment of the lower court is correct and that it must be affirmed.

Plaintiff's theory is that he was taken as a partner by the defendant in the construction of these wharves and in the wharfage business, under conditions by which the contract for building the same was made and executed by the defendant in his individual name, that the funds raised for the payment of such contract were realized on a note exe-

cuted by the defendant alone and renewed four times, and that by contributing his labor alone he, plaintiff, became a full partner in the business and owner of one-half of the wharves.

The main support of his theory is his own testimony, corroborated by the circumstance that on two different occasions he introduced the defendant to third parties as "HIS PARTNER," and that the latter did not object or correct him. To resist his theory the record shows the sworn denial of the defendant, corroborated by numerous circumstances and by all the equities of the case, all of which point to the correctness of the defendant's theory, which is as follows:

That the wharves were built exclusively by himself on the lands of his father-in-law, Peter Marcy, with whom he had expected to operate in the wharfage business in the early future on a larger scale, after a successful experiment; that the funds needed for the construction of the wharves were raised on his own note, with the endorsement of his father-in-law, with which the note (for four months) was renewed four times; that being unable on account of his occupation as a farmer to give the time and the attention required by the nature of the business, he had employed the plaintiff, who was married to a niece of his wife, to attend to the business as a general solicitor and as collector, on a compensation to consist of one-fourth of the gross receipts of the wharfage business, with the additional right of disposing of a large portion of the ballast taken from the vessels mooring at his wharf, which was allowed him as a perquisite.

That theory is supported not only by the defendant's testimony but by numerous indisputable facts shown by the record, of which we enumerate the following:

From the books of the concern, kept by the plaintiff himself, it appears that one-fourth of the wharfage received from each particular vessel was allowed him and the balance to the defendant, and that all the receipts have been accounted for. The billheads and the business cards of the concern show that the business was exclusively the defendant's and that plaintiff's name was printed in red ink across the business cards, as is the custom with clerks and other agents of commercial houses. In a letter written by plaintiff from Bay St. Louis to the defendant in August, 1881, he requests the defendant to send him "$10 of my commission on wharfage of bark Buteshire." The attempt in his testimony to explain this expression by saying that he might as well have said, as he had the right to say, "my proportion," is as weak as it is disingenuous and cannot have the effect of subverting the plain meaning of words written at a time not suspicious.

From his own testimony it appears that he had no experience in the wharfage business; that he had no means and no property; that there were judgments against him resulting from the recent failure of a commercial house of which he had been a partner, and that although he kept the books of the concern he does not know what was the cost of the construction of the wharves.

But, on addition to the foregoing facts and of others not herein enumerated, we find circumstances which absolutely dispel plaintiff's whole theory of a partnership in this business.

We cannot conceive of a rational being who would form a partnership under such conditions as are herein advanced by plaintiff. His pretension would tax our minds to believe that the defendant, who had secured the use of the grounds, who had made and signed a contract for the construction of the wharves, had executed his individual note for the purpose of raising the necessary funds, had then taken the plaintiff, situated as hereinabove shown, in full partnership, with the right of receiving as his share of the business one-fourth of the gross receipts before meeting the payment of the debts of the concern, and had vested him with the ownership of one-half of the wharves before payment of the construction of the same. Such a proposition cannot receive judicial sanction, even if not met by negative testimony.

On the second branch of the case, the record shows that the refusal of the lands for the price of $90,000 was given by Mr. Marcy to the plaintiff and the defendant jointly, on the 11th of November, 1881, provided the sale be effected within thirty days.

They then employed R. S. Howard, an influential merchant in this city, to negotiate a sale for them at an advanced price, so as to secure the difference as their joint profit. At the end of the time, and of an extension of three days, Howard having failed to secure a satisfactory result, informed Mr. Marcy of the failure of his negotiation and formally abandoned the agency, returning to Marcy his written agreement.

At this juncture Willett, the defendant, who had studied and closely followed up the situation of affairs, brought a Mr. Duggan to Mr. Marcy and obtained from the latter a written agreement to sell the lands to Willett for $100,000, with the authority to use Duggan as his agent in the negotiation for a sale, the whole to be completed within two days. Within the delay a satisfactory sale was effected through the efforts of Duggan, whereupon Willett received $10,000 from Mr. Marcy as his compensation or profit in the transaction.

The mere recital of these facts is conclusive against plaintiff's position on this branch of the case. The record shows to our entire satis-

faction that the delay granted to Maunsell and Willett on the refusal given to them by Mr. Marcy had expired, that all negotiations thereunder had terminated and that the connection of Maunsell with the matter of the sale had been completely severed when the contract under which the lands were sold was entered into with Willett, with Duggan as his broker or agent. As was clearly and truthfully stated by Mr. Marcy in his testimony, the latter "was a new transaction altogether, and Maunsell was not known in that transaction at all."

Hence, he has no claim to the profits realized by Willett.

Judgment affirmed.

Rehearing refused.