ROGERS, J.
 

 Plaintiff appeals from a judgment rejecting his demand for an accounting of an alleged partnership. '
 

 Plaintiff’s wife and the defendant are sister and brother, the children of John Harries, who was engaged for a number of years in the painting and wall-papering business in the city of New Orleans. John Harries retired and left Louisiana for California in July, 1923, selling his business, at the time, to his son, Ernest J. Harries, who had been in his employ for approximately twelve years.
 

 Plaintiff contends that John Harries, his father-in-law, while on a visit to plaintiff’s home in England in the fall of 1922, offered plaintiff a partnership in the business in which he was presently engaged in the city of New Orleans. That in consequence of this offer, plaintiff left in May, 1923, his employment in England and came to the United States. That in the early part of August, 1923, he formed a verbal partnership with his brother-in-law, Ernest J. Harries, under the firm name of J. Harries. That he advanced the firm on two occasions a total of $509 towards the pay roll. That these advances were subsequently repaid him. That from July, 1923, to July, 1924, he devoted his entire time and attention to the business and was allowed a drawing account of $30 a week. That on January 19, 1924, he was paid $500 as his share of the profits up to that time. That for no reason at all Ernest J. .Harries, the defendant, dissolved the partnership in July, 1924. Hence, he sues for an accounting of the partnership.
 

 Defendant denies the existence of any partnership between him and plaintiff, and avers that he merely hired plaintiff as a clerk and bookkeeper, at a salary of $30 per week, discharging him when his services were no longer necessary.
 

 
 *88
 
 Plaintiff, in support of ills contention, relies on his own testimony and on the testimony of his wife and of a stepson of John Harries, corroborated by the circumstances that on two occasions he lent Ernest J. Harries money for pay roll purposes and that on one occasion Ernest J. Harries gave him $500. As against plaintiff’s contention, the record contains defendant’s denial, under oath, of the existence of the alleged partnership, corroborated by numerous circumstances pointing to the truthfulness of the denial.
 

 Plaintiff testified that he was induced to leave England by the representations of his father-in-law, John Harries, that he would be given a partnership in the latter’s business. He also testified that he formed a partnership with his brother-in-law, Ernest J. Harries, in the business which Ernest J. Harries had acquired from his father, John Harries. Plaintiff’s wife testified, in a general way, to the same effect. This is the only direct testimony offered by plaintiff to establish the existence of the alleged partnership. For whatever it may be worth, the testimony of plaintiff’s wife must be received with some allowance for the conjugal relationship, since it would he wholly unnatural if she did not feel a very strong bias in favor of her consort.
 

 The testimony of plaintiff’s other witness is we think, on the whole, against plaintiff’s contentions. It is true that this witness, who was in the employ of Ernest J. Harries for about one month after he took over the business of his father, testified that plaintiff seemed to exercise some authority in the establishment, because he directed witness, who was an outside man, where the jobs were that he was to work at. But these directions were not at all inconsistent with plaintiff’s employment by Ernest J. Harries as the inside man, in charge of the office. As such employee he was as much in a position to give the witness the necessary information concerning the jobs on which his employer was engaged as if he were, in fact, a partner in the business. The witness, was a son by her previous husband of the wife of John Harries. Like Ernest J. Harries, he was employed for a number of years by John Harries, whose name he bore and by whom he was brought up as a son. He remained with Ernest J. Harries as an employee for one month after he took over the business. This witness testified that Ernest J. Harries never told him that plaintiff was a partner in the business. He knew nothing about any such partnership of his own knowledge. The witness, apparently, had never heard of any promise or proposition by John Harries to admit plaintiff into partnership with him. On the contrary, he declared that he left the employ of Ernest J. Harries to engage in a similar business on his own account, because he felt that he had not been treated right, since it had always been understood that when John Harries retired he would turn the business over to Ernest J. Harries, his son, and the witness, his stepson. It is passing strange that this witness, who was so closely connected by family and business ties with John Harries and Ernest J. Harries, had no knowledge, if such was the fact, of the alleged promise of the former and the express agreement of the latter to admit plaintiff as a partner into the business conducted under the name of J. Harries.
 

 Both plaintiff and his wife acknowledged as witnesses that plaintiff did not put any money into the business.
 

 On August 31, 1923, plaintiff lent defendant $500, of which amount $200 was used in connection with a transaction concerning certain Liberty bonds, and the balance of $300 was used in making up the amount necessary to
 
 *90
 
 discharge defendant’s pay roll. Obviously, the fact that plaintiff lent defendant money to pay his employees or for some other purpose did not constitute plaintiff a partner in defendant’s business. The loan was repaid later.
 

 Plaintiff and his wife testified that defendant gave plaintiff $500 in January, 1924, as his share of the profits of the business to that date. Beyond the bare statement of these witnesses, there is nothing in the record to show that any such division of profits took place. Defendant denied that such was the case. Certainly, no evidence was adduced to show that defendant received a like amount, or any amount, as his share in any distribution of profits at that time. Defendant’s explanation is that he gave plaintiff the $500 in question because of the relationship that existed between them. Whether defendant gave plaintiff the money to indirectly help his sister, who was plaintiff’s wife, or as extra compensation for plaintiff’s services, the gift itself did not make plaintiff a partner of his employer.
 

 Plaintiff’s claim that he was promised an interest in the business of John Harries, the original owner thereof, is wholly irreconcilable with the facts as disclosed by the record. In the first place, plaintiff and his wife, after their arrival from England, lived at the home of John Harries for about two months before John Harries sold out to the defendant and left for California. During this period, plaintiff was neither employed nor taken into partnership by John ’Harries. Plaintiff has offered no explanation of this circumstance. In the second place, the transaction whereby John Harries conveyed his business to his son Ernest J. Harries is evidenced by a formal notarial act. One of the obligations expressly assumed by the purchaser in this instrument is the obligation, “not to sell, mortgage, encumber, convey or dispose of in any manner whatsoever and not to take in any partner or give any interest of any kind to any one in and to any part or all of the property herein sold as long as there remains any balance due on the purchase price thereof.” This stipulation shows beyond dispute that neither John Harries nor Ernest J. Harries desired to admit any person whatsoever into partnership; and that so strongly did they feel on that subject they expressly stipulated against such a contingency. There was not only no reason for this agreement, but, on the contrary, every reason against it, if John Harries, in the first instance, and Ernest J. Harries, in the second instance, had promised plaintiff an interest in the business conveyed by the notarial act.
 

 It further appears from the books of the concern, kept by plaintiff himself, that plaintiff was carried thereon first as a clerk and later as a bookkeeper at a salary of $30 per week; whereas, the defendant was carried thereon under an individual account. A balance sheet in evidence was testified to by Jules J. Vio'sca, bookkeeper for John Harries, and for a part of the time of Ernest J. Harries, until he had taught plaintiff how to manage the books, as showing the difference between the assets owned by the defendant and the gain of the business for a particular period less the amount charged to the defendant’s personal account, no reference being made, in the audit to the plaintiff. Viosca further testified that plaintiff was regarded as a clerk of the defendant.
 

 When defendant discharged plaintiff, he paid him, through plaintiff’s wife, an additional two weeks’ salary at $30' per week, plaintiff’s wife claiming that plaintiff was entitled to two weeks’ notice of his discharge. If plaintiff were a partner in the business, as he contends, then was the time for him to
 
 *92
 
 speak and claim Ms rights as a partner, not to accept his discharge as defendant’s employee, apparently without protest, upon the payment of an additional two weeks’ salary.
 

 Looking at plaintiff’s claim in the most favorable light, as shown by the record, the conclusion is inescapable that plaintiff has utterly failed to establish the existence of a partnership between him and the defendant with legal certainty. Maunsell v. Willett, 36 La. Ann. 322.
 

 For the reasons assigned, the judgment appealed from is affirmed, at the cost of plaintiff and appellant.